IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RAUL RIVERA LEBRON, et al. | |
| Plaintiffs | Civil No. 98-1031(SEC) |
| v. | |
| CELLULAR ONE, et al. | |
| Defendants | |
| ************************************ | |
| TRANS UNION DE PUERTO RICO, INC. | |
| Defendant/Third Party Plaintiff | |
| v. | |
| CELLULAR ONE | |
| Defendant/Third Party Defendant | |
| ************************************ | |

## OPINION AND ORDER

This case is before the Court on the parties' cross-motions for summary judgment. The plaintiffs have moved for partial summary judgment on the issue of liability. **(Docket # 68)**. On their part, Professional Recoveries, Inc. (hereinafter "Professional") and Trans Union de Puerto Rico, Inc. (hereinafter "Trans Union") have separately moved to have this action, as it pertains to them, dismissed in its entirety. **(Dockets # 76 and # 83**, respectively). Because Professional and Trans Union have demonstrated that the evidence in this case, taken in the light most favorable to the plaintiffs, "fails to yield a trial worthy issue as to some material fact," Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (internal quotation marks and citation omitted), and because they are both entitled to judgment as a matter of law, the Court grants their respective motions. See Fed. R. Civ. P. 56(c). The plaintiffs' motion for partial summary judgment is denied.

<u>**Civil No. 98-1031(SEC)**</u>                                                                                              2

**Background**

The plaintiffs, Raul Rivera-Lebrón, his wife and their conjugal partnership (hereinafter "plaintiffs") initiated this action on January 16, 1998, against defendants CCPR Services, Inc. d/b/a Cellular One (hereinafter "Cellular One"), Professional and Trans Union (**Docket # 1**). Plaintiffs invoked jurisdiction under the Federal Communications Act, 47 U.S.C.A. §§ 151 <u>et</u> <u>seq.</u> and the Consumer Credit Protection Act, 15 U.S.C.A. §§ 1601 <u>et</u> <u>seq.</u>; or, alternatively, pursuant to the diversity of citizenship statute, 28 U.S.C.A. § 1332. In their complaint, plaintiffs alleged that Cellular One issued a cellular telephone in plaintiff Rivera-Lebrón's name, even though he never inquired about receiving one. They averred that bills in the amount of $3,247.08 were rendered for these unsolicited telephone services. Plaintiffs claimed, however, that they had no knowledge of these accumulating charges because the bills were not mailed to their residence, but instead to some other indeterminate address. Because of plaintiffs' delinquency, the debt was referred to Professional for collection. Plaintiffs charged Professional with constantly and caustically harassing them in its collection efforts. When plaintiffs refused to pay the debt, plaintiff Rivera-Lebrón's name was provided by either Cellular One or Professional to Trans Union, a credit reporting agency operating in Puerto Rico. Plaintiffs charged Trans Union with "carrying in its records reports to the effect that [p]laintiff Rivera-Lebrón failed to pay an account," and that for as long as this information was maintained, plaintiff Rivera-Lebrón's "bad credit ratings [would] continue to be reported." (**Docket # 1, at 4**). Finally, plaintiffs claimed that as a result of this series of events their well-earned personal credit was destroyed, and that loan applications made by them in the banking industry had been rejected because of their bad credit. On July 17, 1998, the Court issued an opinion and order dismissing all of plaintiffs' claims, except for those under the Consumer Credit Protection Act

**Civil No. 98-1031(SEC)**                                                                 3

against Professional and Trans Union.[1] See Rivera-Lebrón v. Cellular One, 13 F. Supp. 2d 235 (D.P.R. 1998). We now address those claims.

**Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Accordingly, the moving party is initially responsible for showing the absence of a trial-worthy issue as to some material fact, and that he or she is entitled to judgment as a matter of law. Once the moving party has met this burden, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." The adverse party, however, may not rest upon the mere allegations and denials. Fed. R. Civ. P. 56(e).

Additionally, in this District, both the moving and nonmoving parties must comply with the requirements set forth in Local Rule 311.12. The movant must annex to his or her motion "a separate, short, and concise statement of the material facts as to which [he or she] contends there is no genuine issue to be tried and the basis of such contention as to each material fact, properly supported by specific reference to the record." Id. The nonmovant, in turn, must include in his or her opposition, "a separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried, properly supported by specific reference to the record." Id. When the adverse party fails to comply with the latter obligation, all the facts set

---

[1] Cellular One, however, was subsequently dragged back into this suit as a third party defendant by Trans Union. **(Dockets # 35-A and # 59)**.

**Civil No. 98-1031(SEC)**     4

forth in the movant's statement are deemed admitted.[2] Id. Otherwise, the Court would be forced to search "through the entire record for evidence of genuine issues of material fact which might preclude the entry of summary judgment." Méndez-Marrero v. Toledo, 968 F. Supp. 27, 34 (D.P.R. 1997), referring to Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 930-31 (1st Cir. 1983). "Although this omission does not signify an automatic defeat, it launches the nonmovant's case down the road toward an early dismissal." Tavárez v. Champion Products, Inc., 903 F. Supp. 268, 270 (D.P.R. 1995).

      Such is the scenario in this case. Plaintiffs have failed to properly oppose Professional's and Trans Union's cross-motions with the required documentation and reference to the record. Accordingly, all the material facts set forth in Professional's and Trans Union's respective statements of undisputed material facts are deemed admitted. See A.M. Capen's Co., Inc. v. American Trading and Production Corp., —F.3d— (1st Cir. 2000); 2000 WL 127117, at *2; Dyno Nobel, Inc. v. Amotech Corp, 63 F. Supp. 2d 140, 146 (D.P.R. 1999); Orbi, S.A. v. Calvesbert & Brown, 20 F. Supp. 2d 289, 291 (D.P.R. 1999). Thus, we need only examine whether given the facts, Professional and Trans Union are entitled to judgment as a matter of law. We address each party's contentions *seriatim*.

---

[2] This is the so-called "anti-ferret rule." See, e.g., Orbi, S.A. v. Calvesbert & Brown, 20 F. Supp. 2d 289, 291 (D.P.R. 1998).

**Civil No. 98-1031(SEC)**                                                                                                           5

**Applicable Law/Analysis**

**Plaintiffs Claim Against Professional**

In their purported motion for summary judgment,[3] plaintiffs seek partial summary judgment on the issue of liability against Professional by reiterating the allegations contained in the complaint. **(Docket # 1, at 5)**. Plaintiffs maintain that Professional tried to collect the debt at issue under duress, by harassing and physically threatening them. They contend that this conduct continued even after they informed Professional that they were disputing the validity of the debt. **(Docket 68, at 3-4)**. Plaintiffs, however, do not point to any evidence in the record in support of these allegations. In their cross motion, Professional seeks summary judgment on the basis that the evidence fails to identify any proscribed conduct on its part, and that it maintains procedures reasonably adapted to avoid errors in its collection efforts.

Congress enacted the Fair Debt Collection Practices Act (hereinafter the "FDCPA") as part of the Consumer Credit Protection Act to protect consumers "from a host of unfair, harassing, and deceptive debt collection practices." S. Rep. No. 95-382, at 1-2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. The FDCPA's purposes are "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

---

[3] In addition to not conforming with Local Rule 311.12, plaintiffs' motion does not satisfy the requirements set forth in Local Rule 311.2 (requiring that the motion "state with particularity the grounds therefor," and be accompanied by a "brief which shall contain a concise statement of reasons in support of the motion, and citations of authorities upon which the movant relies.").

**Civil No. 98-1031(SEC)**                                                                 6

Section 806 of the FDCPA proscribes harassment or abuse by prohibiting debt collectors to "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Id. § 1692d. Among the conduct prohibited by § 806 is "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person." Id. (1). A collector may avoid liability by showing "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Id. § 1692k(c).

In this case, Professional's actions in connection with plaintiff Rivera-Lebrón's debt and its communications with plaintiff in that regard may be summarized from Professional's statement of undisputed facts, which has been admitted, and from the materials referred therein, as follows. Professional is a debt collection agency; it does not furnish any information to credit reporting agencies as part of its collection efforts. Professional maintains proper procedures to avoid any errors in connection with its collection efforts. As part of these procedures, Professional seeks verification of any disputed debt and ceases collection until such verification is obtained and mailed to the debtor.

Professional initiated collection efforts against plaintiffs based upon the information provided to it by Cellular One pursuant to a collection services agreement. (**Docket 76**, Exhibit B). On March 10, 1997, Professional sent plaintiff Rivera-Lebrón a demand for payment or debt validation notice containing all the necessary information required under the FDCPA. See 15 U.S.C. § 1692g(a). (**Docket # 80**, Annex 2). In the validation notice, Professional informed plaintiff Rivera-Lebrón, *inter alia*, (1) that if he did not dispute the debt within thirty days of receipt of the notice, the debt

**Civil No. 98-1031(SEC)**                                                                                              7

would be assumed valid, (2) that upon his written request, Professional would obtain verification of the debt, (3) that upon his written request, Professional would provide him with the name and address of the original creditor, and (4) that he could request Professional to cease all communications with him. (**Id.**).

On May 1, 1997, plaintiff Rivera-Lebrón sent a letter to Professional disputing the debt. In this letter, Rivera-Lebrón requested Professional to "immediately cease and desist from continuing to communicate with me to collect from me a debt which I do not recognize as mine." (**Id.** Annex 7). Rivera-Lebrón accompanied this letter with a sworn declaration given on April 30, 1997, in which he stated that he had never applied for services with Cellular One, and that the debt in the amount of $3,247.08 in connection therewith was not his. (**Id.** Annex 6).

Upon receiving plaintiff's letter disputing the debt, Professional ceased its collection efforts until it obtained verification of the debt from Cellular One and mailed it to Rivera-Lebrón. (**Docket # 76**, Exhibit B; **Docket # 80**, Memorandum from Liz Declet, Cellular One, to Arianelis Maldonado, Professional Recoveries (Nov. 21, 1997)). Finally, Professional's business records "do not indicate that Raúl Rivera Lebrón and/or his wife [plaintiff Miriam Santiago] were harassed by Professional or that any of its employees ha[s] committed any intentional act of harassment" against Rivera-Lebrón or his wife. (**Docket # 76**, Exhibit B).

Plaintiffs have failed to contest these facts. Their motion for summary judgment is only a reiteration of the allegations in the complaint. Moreover, plaintiffs did not point during discovery to any items which could create a genuine issue of material fact. Regarding their allegations of harassment, Professional asked plaintiffs in a first set of interrogatories to

(a) Identify . . . all witnesses with knowledge of the same.

      (b) Identify and produce all documentary evidence which supports such harassment.
      (c) Identify and produce all material evidence which supports such harassment.
      (d) Identify and produce all demonstrative or graphic evidence which supports such harassment.

**(Docket # 76**, Exhibit 1, at 8).

With respect to witnesses, plaintiffs named themselves and one Jacinto Treviño, Chairman of the Cooperativa de Ahorro y Crédito Roosevelt Roads. Mr. Treviño's purported testimony would not implicate Professional, because he would testify only as to "the negative credit reports submitted to said bank institution by Trans Union de Puerto Rico, Inc." Any other witnesses, plaintiffs advanced, would be "timely announced." (**Id.** Exhibit 2, at 4). They announced none. As to the remaining questions, plaintiffs made reference to six documents annexed to their answers, three of which are not relevant to plaintiffs' claims against Professional.[4] (**Id.**). The other three are Professional's validation notice in compliance with the FDCPA, plaintiff Rivera-Lebrón's letter disputing the debt, and Rivera-Lebrón's sworn declaration. (**Docket # 80**, Annexes 2, 6 and 7, respectively). In its interrogatories Professional also asked plaintiffs to "[i]dentify any and all oral or written communications . . . [with] Professional . . . ." (**Docket # 76**, Exhibit 1, at 7). Plaintiffs responded by simply referring to plaintiff Rivera-Lebrón's letter disputing the debt.[5]

---

[4] These three documents are: (a) a "Notice of Denial of Credit Application and Main Reason(s) Thereof" from the Cooperativa de Ahorro y Crédito Roosevelt Roads, (b) a credit report of plaintiff Raúl Rivera-Lebrón prepared by defendant Trans Union, and (c) a letter from plaintiff Rivera-Lebrón to Mr. Mike García, Cellular One (May 1, 1997). (**Docket # 80**, Annexes 1, 3 and 8, respectively).

[5] Moreover, plaintiffs were ordered to supplement their answers to Professional's interrogatories by October 13, 1999. (**Docket # 60**). Professional informs that "plaintiffs supplemented their discovery on October 28, 1999, by notifying the report of forensic expert Héctor Delgado Rodríguez. On this last supplementation plaintiffs did not identify or produce any evidence that could be characterized as harassment by Professional." (**Docket # 76, at 4 n.1**).

**Civil No. 98-1031(SEC)**                                                                                              9

The record clearly reveals no evidence that Professional engaged in harassing or otherwise proscribed conduct toward plaintiffs. Professional sent Rivera-Lebrón a notice of validation in compliance with the FDCPA. Upon receipt of plaintiff's letter disputing the debt, Professional immediately ceased all collection efforts until after it obtained verification and mailed it to plaintiff. In so doing, Professional acted in accordance with the FDCPA, which mandates that upon receipt of a written notice disputing a debt, "the debt collector shall cease collection of the debt . . ., until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Under these circumstances, plaintiffs have failed to state a claim against Professional pursuant to the FDCPA. See id. See also Bartlett v. Heibl, 128 F.3d 497, 501 (7th Cir. 1997) (debt collector "must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor"); Vasquez v. Gertler & Gertler, Ltd., 987 F. Supp. 652, 657 (N.D. Ill. 1997) (debt collector "need only cease collection if the consumer disputes the debt . . . within the validation period, and then only until it mails a copy of the verification to the consumer") (citation omitted); Jenkins v. Heintz, 124 F.3d 824, 834 (7th Cir. 1997) ("Where defendants maintain extensive systems designed to prevent errors, an unintentional violation of the [FDCPA] will not result in liability.") (citation omitted)). See also 15 U.S.C. § 1692k(c) ("debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."). Therefore,

**Civil No. 98-1031(SEC)**  10

Professional's motion for summary judgment should be granted, and plaintiffs' complaint dismissed as it pertains to Professional.

**Plaintiffs Claim Against Trans Union**

In their motion, plaintiffs also seek partial summary judgment against Trans Union on the issue of liability, again, by reiterating the allegations contained in the complaint. (**Docket # 1, at 5**). Plaintiffs charge that Trans Union, "when presented with the evidence and a sworn statement neglected to take the necessary proph[y]lactic action need[ed] to liberate [plaintiff Rivera-Lebrón] of the [b]ad credit report." (**Docket # 68, at 4**). They further claim that Trans Union "failed to properly errase (sic) [Rivera-Lebrón's] bad credit report when confronted with the facts ..." (**Id. at 3**). In essence, plaintiffs contend that Trans Union maintained in its records erroneous information showing that plaintiff Rivera-Lebrón was indebted to Cellular One in the amount of $3,247.08. Again, plaintiffs do not point to any evidence in the record—or elsewhere, for that matter—that would lend credit to their allegations.

Congress enacted the Fair Credit Reporting Act (hereinafter the "FCRA") as part of the Consumer Credit Protection Act "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair to the confidentiality, accuracy, relevancy and proper utilization of such information . . . ." 15 U.S.C. § 1681(b). For this purpose, the FCRA imposes upon credit reporting agencies, *inter alia*, a duty to "follow reasonable procedures [when preparing a consumer report] to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Id. § 1681e(b). See also Rivera-Lebrón, 13 F. Supp. 2d at 239. Yet the FCRA "does not impose strict liability for inaccurate entries. Rather, the plaintiff

**Civil No. 98-1031(SEC)** 11

must show that the inaccuracy resulted from a negligent[6] or willful[7] failure to use reasonable procedures when the report was prepared." Sepulvado v. CSC Credit Services, Inc., 158 F.3d 890, 895 (5th Cir. 1998) (citation omitted). To succeed on a claim under § 1681e(b),

> a plaintiff must establish that: (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury. In considering a challenge pursuant to § 1681e(b), the threshold question is whether the challenged credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedures is necessary. But even if the information is inaccurate, a credit reporting agency is not held strictly liable under the FCRA merely for reporting it; rather, the consumer must show that the agency failed to follow reasonable procedures in generating the inaccurate report. To defeat a motion for summary judgment on a § 1681e(b) claim, a plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report.

Whelan v. Trans Union Credit Reporting Agency, 862 F. Supp. 824, 829 (E.D.N.Y. 1994) (citations and internal quotation marks omitted).

In this case, the following facts contained in Trans Union's statement of uncontested facts, and which are properly supported by specific reference to the record, have been admitted:

> 1. Trans Union de Puerto Rico is a "consumer reporting agency" pursuant to the Fair Credit Reporting Act, that collects and furnishes credit information about consumers to its c[u]stomers.

> 2. The information about the consumers, stored in Trans Union's database is provided by the creditors, who deal directly with each c[u]stomer, and who are supposed to properly identify them.

---

[6] See 15 U.S.C. § 1681o.

[7] See id. § 1681n.

**Civil No. 98-1031(SEC)**                                                                                           12

      3. Trans Union operates as a repository of information furnished by the creditors, and specifically in this case, by Cellular One.

      4. On the 15th day of October, 1997, a credit report of [plaintiff Rivera-Lebrón] was disclosed upon his own request. At the end of the report there is a note that instructed him about the process to follow if he believed that the credit statement was incorrect.

      5. However, plaintiff never contacted Trans Union to dispute his credit information, and never requested from [Trans Union] an investigation of his credit report.

      6. On January 13, 1998, plaintiff filed this suit . . ., summons was issued on January 22, 1998, and [Trans Union] served on January 30, 1998. This was the first time Trans Union became aware that plaintiff was questioning the correctness of his credit report, regarding his account with Cellular One.

      7. On February 2, 1998, Trans Union sent [a form] to Cellular One alerting them of plaintiff's claim and requesting Cellular One to verify and correct their files in order to avoid any other mistakes in the credit report.

      8. After performing an investigation respecting the account [at] issue, on March, 1998, Trans Union deleted from their credit database the information regarding plaintiff's account with Cellular One.

**(Docket # 83**, Statement of Uncontested Facts).

In short, plaintiffs have failed to show that the information contained in the credit report prepared by Trans Union was inaccurate. Even if the Court were to assume, only for the sake of the argument, that the information was not accurate, plaintiffs have not shown that Trans Union did not follow reasonable procedures in generating the credit report. There existing no genuine dispute concerning these facts, Trans Union's motion for summary judgment should be granted, and plaintiffs' complaint dismissed as it pertains to Trans Union.

**Civil No. 98-1031(SEC)**                                                                                                         13

**Plaintiffs Claim Against Cellular One**

Plaintiffs originally claimed against Cellular One under the Federal Communications Act, 47 U.S.C.A. §§ 151 et seq. and the Consumer Credit Protection Act, 15 U.S.C.A. §§ 1601 et seq. They alternatively invoked diversity jurisdiction pursuant to 28 U.S.C.A. § 1332. In its previous opinion and order, the Court held that plaintiffs had failed to state a claim under either the Federal Communications Act or the Consumer Credit Protection Act. The Court further found that diversity jurisdiction was lacking. See Rivera-Lebrón, 13 F. Supp. 2d at 239-241. Accordingly, plaintiffs' complaint was dismissed in its entirety as it pertained to Cellular One. (**Docket # 19A**).

Subsequently, however, Cellular One was brought back into this suit as a third party defendant by Trans Union. (**Docket # 35A**). And it was thus that upon proper motion (**Docket # 33**) and pursuant to Fed. R. Civ. P. 60(b)(6) and 28 U.S.C. § 1367(1), the Court allowed plaintiffs to plead against Cellular One under Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141 (1991). Now, however, having the Court dismissed plaintiffs' federal claims against Professional and Trans Union, and there existing no diversity of citizenship between plaintiffs and Cellular One, the Court is bereft of original jurisdiction and plaintiffs' pendent state-law claims should be dismissed for lack of supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966); Camelio v. American Federation, 137 F.3d 666, 673 (1st Cir. 1998): Cruz v. Radtech, Inc., 70 F. Supp. 2d 77, 83-84 (D.P.R. 1999).

**Conclusion**

For the foregoing reasons, Professional's and Trans Union's separate motions for summary judgment (**Dockets # 76 and # 83**) are hereby **GRANTED**, and plaintiffs' motion for partial summary judgment (**Docket # 68**) **DENIED**. Accordingly, plaintiffs complaint is hereby

**Civil No. 98-1031(SEC)**                                                                                                    14

**DISMISSED** with prejudice as it pertains to Professional and Trans Union. Furthermore, plaintiffs' complaint is hereby **DISMISSED** without prejudice as it pertains to Cellular One, pursuant to 28 U.S.C. § 1367(c)(3). Judgment shall follow accordingly.

In light of today's ruling, the following motions are **MOOT**: CCPR Services, Inc.'s "Motion to Dismiss Under Fed. R. Civ. P. 41(b) and Fed. R. Civ. P. 37 " (**Docket # 63**); "Plaintiffs' Motion to Have . . . Expert Witness Report Accepted in the Spanish Language . . . ." (**Docket # 67**); CCPR Services, Inc.'s request to be relieved from filing a pretrial memorandum (**Docket # 71**); Plaintiffs' request for extension of time (**Docket # 75**); and Professional's "Motion to Strike Examiner's Report Filed By Plaintiffs" (**Docket # 78**).

**SO ORDERED.**

In San Juan, Puerto Rico, this _17_ day of February, 2000.

SALVADOR E. CASELLAS
United States District Judge